**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **FENDER MUSICAL INSTRUMENTS** ) | |
| **CORPORATION,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:13-cv-01075** |
| ) | **Judge Sharp** |
| **KELTON SWADE, INDIVIDUALLY,** ) | |
| **and KELTON SWADE, LLC, d/b/a** ) | |
| **KELTON SWADE GUITARS** ) | |
| ) | |
| **Defendants.** | |

## MEMORANDUM OPINION

Pending before the Court is a Motion to Reopen Case, to Hold Defendants in Contempt, and for Sanctions filed by Plaintiff Fender Musical Instruments Corporation ("Fender"). (Docket No. 96). Defendants Kelton Swade and Kelton Swade, LLC d/b/a Kelton Swade Guitars (collectively "Swade") filed a Response in Opposition. (Docket No. 99). Fender filed a Reply. (Docket No. 104). The Court held hearings on the matter on February 9 and March 3, 2017. Having reviewed the briefs and court transcripts, the Court will grant Fender's motion and will find Swade in contempt of court for violating the previous consent order. The court will impose $50,000 in sanctions.

## BACKGROUND

Kelton Swade is a guitar luthier in Nashville, Tennessee. (Docket No. 99 at 1). Fender is a large, worldwide manufacturer of guitars and related equipment. (Docket No. 1 at 3). The shapes of Fender's headstocks are trademarked designs. (Docket No. 96-1 at 3). Specifically at issue in this case are Fender's Telecaster and Stratocaster headstock designs. In 2013, Fender initiated the present lawsuit after becoming aware of two of Swade's guitar headstock designs

1

that Fender believed infringed Fender's Telecaster and Stratocaster headstock design trademarks: Swade's AVR-T and AVR-S designs, respectively.

The parties came to an agreement and entered into a Confidential Settlement Agreement ("Agreement"). In the Agreement, Swade agreed to "completely cease using . . . any trademark, service mark, name, logo, design, source designation, or identifying characteristic of any kind that is a copy, reproduction, colorable imitation, or simulation of or confusingly similar to, *or in any way similar to*" Fender's Telecaster and Stratocaster headstock designs. (Docket No. 120 at 6) (emphasis added). This Agreement was incorporated into a Final Judgment and Permanent Injunction on Consent Order entered by this Court. (Docket No. 94). In the Permanent Injunction, the Court also expressly retained jurisdiction over the matter in order to enforce any violations of the Agreement.

After signing the Agreement and having it incorporated into the Permanent Injunction, Swade changed the headstock designs of his AVR-T and AVR-S guitars. Swade claims his new designs "incorporate objectively identifiable changes that make them immediately distinguishable from [Fender's] Telecaster or Stratocaster guitar headstocks," (Docket No. 99 at 2), while Fender argues that "Swade merely made very minor modifications to his headstock designs," (Docket No. 96-1 at 6). The following pictures show Fender's headstock designs on top, Swade's pre-Agreement headstock designs in the middle, and Swade's post-Agreement, redesigned headstock designs on the bottom. Fender's Telecaster and Swade's AVR-T designs are on the left, while Fender's Stratocaster and Swade's AVR-S designs are on the right:

 

 

Fender argues that the designs on the bottom—Swade's new, redesigned headstocks—violate section 2C of the Agreement: that Swade will not use characteristics "in any way similar to" Fender's Telecaster and Stratocaster headstocks. (Docket No. 96; Hearing Transcript, March 3, 2017 at 14:23:00).[1] Believing that Swade has violated the Agreement incorporated into the Court's Permanent Injunction, Fender filed the current motion.

## LEGAL STANDARD

A decision on a motion for contempt lies within the sound discretion of the Court. Elec. Workers Pension Trust Fund of Local Union #58 v. Gary's Elec. Serv. Co., 340 F.3d 373, 378 (6th Cir. 2003). While the contempt power should not be used lightly, the power "'is a necessary and integral part of the independence of the judiciary, and is absolutely essential to

---

[1] At the time of this Order, the official transcript for the March 3, 2017 hearing was unavailable, so the Court is unable to cite to specific pages and lines. In lieu thereof, the Court cites to the time stamps on the Real Time transcript, noting that there are some issues with the time stamps. For example, there are many transcript lines containing the same time stamp, such as 14:23:00 and 16:23:00.

the performance of the duties imposed'" by law.  Id. (quoting Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 450 (1911)).  Contempt proceedings are used to "enforce the message that court orders and judgments are to be complied with in a prompt manner."  Id.

To hold a litigant in contempt, "the movant must produce clear and convincing evidence that shows that '[the litigant] violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" Id. at 379 (citing NLRB v. Cincinnati Bronze, Inc., 829 F.2d 585, 588 (6th Cir. 1987)).  Courts have the power to enforce terms within a settlement agreement if those terms become part of a court order "either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381 (U.S. 1994); see also GMC v. Ultra Golf Carts, Inc., 2005 U.S. Dist. LEXIS 8839, *7-8 (E.D. Mich. May 13, 2005) (addressing contempt in regards to the court's final judgment and permanent injunction only, and not in regards to the settlement agreement because the settlement agreement was not incorporated into the court's judgment and permanent injunction order).

"Once the movant establishes his prima facie case, the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is *presently* unable to comply with the court's order." Elec. Workers Pension Trust Fund, 340 F.3d at 379 (emphasis in original).  To meet this burden, the non-movant must show "'categorically and in detail'" why he is unable to comply with the Court's order.  Id. (quoting Rolex Watch U.S.A. v. Crowley, 74 F.3d 716, 720 (6th Cir. 1996)).  The Court must consider whether he took all reasonable steps within his power to comply with the Court's Order.  Id.

> The Court has broad discretion to determine how best to enforce its injunction.  In this civil contempt proceeding, the purpose of any such sanction . . . must be

remedial and/or coercive, not punitive. To the extent the sanction serves a remedial function, it should compensate . . . for damages caused by . . . noncompliance.

Stryker Corp. v. Davol, Inc., 75 F. Supp. 2d 741, 743 (W.D. Mich. 1999), aff'd, 234 F.3d 1252 (Fed. Cir. 2000) (internal citations omitted).

## ANALYSIS

### I.     Contempt of the Permanent Injunction

At the outset, it is important to clarify the terms to which Swade agreed in the Agreement and which, as part of the Permanent Injunction, drive this Court's analysis. As the Agreement states, Swade agreed not to use "any trademark . . . or identifying characteristic of any kind that is a copy, reproduction, colorable imitation, or simulation of or confusingly similar to, *or in any way similar to*" Fender's Telecaster and Stratocaster headstock designs. Therefore, Fender may prove that Swade is in contempt of the Agreement and Permanent Injunction by showing that Swade's new designs are "in any way similar to" Fender's. The test is *not*, as Swade argues, whether his designs exhibit "substantial dissimilarity," (Transcript at 16:23:00), or "complete dissimilarity," (Transcript at 16:23:00), or whether they are "sufficiently distinguishable," (Transcript at 15:41:50), or "sufficiently dissimilar," (Transcript at 16:26:00), from Fender's. Furthermore, while trademark infringement in some cases may be measured by a "confusingly similar" test, see e.g., Homeowners Grp., Inc. v. Home Mktg. Specialists, 931 F.2d 1100, 1106 (6th Cir. 1991) ("Ownership of a mark confers both the right to use a particular mark and the right to prevent others from using the same or a confusingly similar mark."), and the words "confusingly similar" are also present in the Agreement, the Agreement goes beyond that. Swade not only agreed to stop using designs that were "confusingly similar" to Fender's designs, but more broadly agreed to stop using designs that were "in any way similar to" Fender's

designs.  Consequently, for purposes of this motion, the test is not whether customers would be confused, or whether there is any level of dissimilarity, but whether there is any similarity at all.

Having listened to the testimony of each party's expert, having considered their demeanor and interests, and having weighed the evidence, the Court finds that Fender has presented clear and convincing evidence that Swade's new headstock designs violate the "in any way similar to" language of the Agreement and Permanent Injunction.  As Fender's expert testified, the designs exhibit similar curvature, similar shapes, and similar overall designs. (Transcript at 14:38:00).  Swade's expert, clearly an individual most knowledgeable about this topic, also testified that the designs are "somewhat similar."  (Transcript at 15:33:38).  Although Swade's expert qualified this statement by stating that the designs are "similar all over the place, all over the business," (Transcript at 15:33:40), the existence of other designs that are similar to Fender's is not helpful when comparing Swade's designs to Fender's because only Swade and Fender are parties to the Agreement currently at issue.

Swade has presented no evidence suggesting that he is currently unable to comply with the Agreement and Permanent Injunction, and the Court does not find that Swade took all reasonable steps in order to do so.  Instead, Swade argues that "in any way similar to" is an "overly broad construction of the term 'similar.'"  (Transcript at 16:23:00).  Swade argues that the phrase is overly broad because it does not contain specific requirements, such as stating that Swade "shall eliminate curves from the underside of the headstock."  (Transcript at 16:14:32). However, the time for making such an argument and for negotiating language was before Swade signed the Agreement and violated the terms thereof.  At this point, Swade has signed an agreement, incorporated into a permanent injunction, requiring him to cease using trademarked designs and identifying characteristics that are "in any way similar to" Fender's.  Swade is bound

by those words and the new designs are similar to Fender's designs, thereby violating the Agreement and Permanent Injunction.

## II.     Safe Distance Rule Applies

The Safe Distance Rule further underscores Swade's violation of the Permanent Injunction.  The Safe Distance Rule

> is a broad equitable remedy that allows courts to create a zone of safety around trademark holders victimized by counterfeiting or other unlawful use of the marks.  It requires courts to draft injunctive relief broadly enough to ensure that a past infringer will not have the opportunity to infringe an owner's rights in the future.

Dominic's Rest. of Dayton v. Mantia, 2009 U.S. Dist. LEXIS 120098, *3-4 (S.D. Ohio Dec. 3, 2009).  "[T]he Safe Distance Rule prevents known infringers from using trademarks whose use by non-infringers would not necessarily be actionable."  Innovation Ventures, LLC v. N2G Distrib., 763 F.3d 524, 544 (6th Cir. 2014) (internal quotations omitted); see also Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd., 282 F.3d 23, 40 (1st Cir. 2002).

> Once a party infringes on another's trademark or trade dress, the confusion sowed is not magically remedied by de minimis fixes.  Instead, the confusion lingers, creating the need for the infringer not only to secure a new non-infringing name (or other infringing characteristic) for his product, but one so far removed from any characteristic of the plaintiff so as to put the public on notice that the two are not related.

Innovation Ventures, LLC, 763 F.3d at 544 (internal quotations omitted).

Swade argues that the Safe Distance Rule does not apply for two reasons.  First, Swade argues the Safe Distance Rule only applies "to people who seek to avoid the effect of the Court's orders by quasi-criminal means," (Docket No. 99 at 4-5), and cites to Innovation Ventures, LLC v. N2G Distrib., 763 F.3d 524, 540 (6th Cir. 2014) and Broderick & Bascom Rope Co. v. Manoff, 41 F.2d 353, 353 (6th Cir. 1930) for this proposition.  However, the Safe Distance Rule "prevents the infringer from engaging in conduct *which would be*

*otherwise lawful* for the infringers's [sic] competitors." <u>Dominic's Rest. Of Dayton, Inc. v.</u>

<u>Mantia</u>, 2009 U.S. Dist. LEXIS 47041, *9 (S.D. Ohio May 20, 2009) (emphasis added). The

Court agrees that the conduct exhibited by some infringers in cases like <u>Innovation Ventures</u> and

<u>Broderick & Bascom Rope</u>, where the Safe Distance Rule is applied, may be questionable, but

Swade has not pointed to any case that specifically requires quasi-criminal activity for the rule to

apply.

Swade also argues that the Safe Distance Rule does not apply because Swade consented

to the permanent injunction and was not subject to an adverse ruling by the court. However, as

part of the Agreement that was incorporated into the Permanent Injunction, Swade agreed to

findings of fact that included the following:

> 7. Defendants promote and sell merchandise through websites and social media, including the website operating under the domain name keltonswade.com. Through these and other channels of distribution, Defendants produce, promote, sells [sic] and offer for sale replica electric guitars, which they currently refers [sic] to [as] "Authentic Vintage Replica" or "AVR" guitars.

> 8. In so doing, Defendants have in the past and are currently making use of the FENDER Marks. Such use was and is without the consent of Fender and *infringes* on the intellectual property rights owned by Fender.

(Docket No. 120 at 22) (emphasis added). Consequently, Swade agreed that his use of the pre-

Agreement AVR-T and AVR-S headstock designs infringed the rights of Fender, and this was

incorporated into the Permanent Injunction. <u>Cf.</u> <u>IP, LLC v. Interstate Vape, Inc.</u>, 2014 U.S. Dist.

LEXIS 157932, *18 (W.D. Ky. Nov. 6, 2014) (refusing to apply the Safe Distance Rule because

"no permanent injunction has issued with respect to" the trademark at issue.).

While the Court does not find Swade's headstock design changes to be "quasi-criminal,"

the changes are *de minimis* in light of his past admission that the pre-Agreement designs

infringed Fender's intellectual property rights. The Safe Distance Rule applies and Swade must

consequently secure a non-infringing design that maintains a safe distance from Fender's and complies with the "in any way similar to" language of the Agreement.

### III.     Sanctions

In the Confidential Settlement Agreement that was incorporated into the Permanent Injunction, the parties agreed that "Swade shall be liable for a payment to Fender for $25,000 for each breach of the Agreement" as liquidated damages.  (Docket No. 120 at 10).  Fender points to internet listings on online reselling websites, such as eBay, that contain advertised sales of Swade's pre-Agreement headstock designs.  Fender argues that each online listing is a "breach" of the Agreement and that Swade should therefore have to pay $25,000 for each online listing.  (Docket No. 96-1 at 20).  However, Fender has not shown that Swade is responsible for, or involved with, these resales nor that Swade is capable of removing all of his pre-Agreement infringing designs from interstate commerce.  These pre-Agreement products are seemingly being resold by third parties that are not involved with the present lawsuit.  Consequently, the Court does not find that requiring Swade to pay $25,000 for each separately listed eBay sale of his pre-Agreement headstock designs is an appropriate sanction.  Using the Court's "wide discretion to fashion sanctions for civil contempt," Schermerhorn v. Centurytel, Inc. (In re Skyport Global Communs., Inc.), 2013 Bankr. LEXIS 3218, *286 (Bankr. S.D. Tex. Aug. 7, 2013) (citing E. Ingraham Co. v. Germanow, 4 F.2d 1002, 1003 (2d Cir. 1925)), the Court will impose a sanction of $50,000 against Swade, finding that each headstock design is a breach of the Agreement.

### CONCLUSION

Based on the foregoing reasons, the Court will find Defendant Swade in contempt of the Permanent Injunction entered by this Court on November 12, 2014.  Swade will be required to

secure new headstock designs for his AVR-S and AVR-T guitars that are not in any way similar to Fender's Stratocaster or Telecaster headstock designs and that also maintain a safe distance from Fender's designs. Fender's request to modify the permanent injunction will be denied. Finally, Swade will be ordered to pay to Fender $50,000 in sanctions for his failure to abide by the Agreement that was incorporated into the Permanent Injunction. Fender is instructed to file a Motion for Attorneys' Fees with supporting affidavits and appropriate documentation within 30 days.

A separate order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE