IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENENSSEE
NASHVILLE DIVISION

| | |
|---|---|
| FENDER MUSICAL INSTRUMENTS CORPORATION | ) ) ) |
| v. | )  Case No. 3:13-cv-1075 ) |
| KELTON SWADE individually and dba KELTON SWADE GUITARS and KELTON SWADE LLC | ) ) ) ) |

**To:** The Honorable Waverly D. Crenshaw, Jr., District Judge

## REPORT AND RECOMMENDATION

Pending before the Court is the Second Motion for Attorneys' Fees and Costs and Plaintiff's Motion for Attorneys' Fees and Costs on Appeal filed by Plaintiff Fender Musical Instruments Corporation ("Fender"). (Docket No. 174.) The motion was referred to the magistrate judge for a report and recommendation. (Docket No. 179.) The Court has reviewed the motion and accompanying filings, the declarations and accompanying billing records previously submitted by Plaintiff's counsel in support of requested fees (Docket Nos. 163 and 164), as well as the response filed by *pro se* Defendant Kelton Swade ("Swade") in opposition (Docket No. 184).[1] For the reasons discussed below, the undersigned respectfully recommends that the motion (Docket No. 174) be GRANTED IN PART AND DENIED IN PART.

---

[1] Although not entirely clear from the *pro se* response, to the extent that it states the position of both Defendants, it is well settled that corporate entities, including limited liability corporations, cannot appear in federal court except through an attorney. *S.E.C. v Merklinger*, 489 F.App'x 937, 939-40 (6th Cir. 2012) (citations omitted); *see also Rowland v California Men's Colony, Unit II men's Advisory Council*, 506 U.S. 194, 201-02 (1993). Nevertheless, because Kelton Swade is also a defendant in his individual capacity, and can appear *pro se*, the Court finds no impediment to considering the response. Further, in allowing Defendants' prior counsel to withdraw (and Swade to proceed *pro se*) this Court already found that "Kelton Swade LLC is a defunct entity that

## I. Factual and Procedural Background

Fender manufactures guitars and related equipment. The designs of Fender's headstocks—the top part or "head" of the guitar that houses the pegs for the guitar strings—are trademarked. Swade makes replica vintage guitars. This trademark and trade dress infringement action was brought by Fender against Swade.[2] Fender's claims were resolved without trial by a consensual final judgment and permanent injunction entered on November 12, 2014, in which the parties agreed that Fender was entitled to judgment on each of the causes of action asserted in the First Amended Complaint. (Docket No. 94.) The parties also agreed, and the Court ordered, that Swade would cease all trademark and trade dress infringement of Fender's marks. (*Id*.) In addition to the final judgment and permanent injunction, the parties entered into a settlement agreement (Docket No. 120), in which they agreed, again, that Swade would cease all infringement of Fender's marks.

Both the settlement agreement and the permanent injunction order provide that, if Swade violates the permanent injunction or breaches the settlement agreement, Fender is entitled to recover its attorney fees and costs in enforcing the order and agreement.[3] On August 24, 2016, Fender filed a motion to reopen this case to hold Swade in contempt and for sanctions. (Docket No. 96.) The Court set a show cause hearing, conducted two hearings and, by order entered on

---

requires no representation." (Docket No. 177 at 1.) For ease of reference, "Swade" is used to refer to Defendants.

[2] Fender originally sued Swade in federal court in Arizona on February 28, 2013 (Docket No. 1), then venue was transferred to this Court on October 2, 2013 (Docket No. 39).

[3] "This Court shall retain jurisdiction over this matter to enforce a violation of this Consent Judgment's terms. If any such violation occurs, the Court shall award . . . (c) attorneys' fees, costs and disbursements, as determined by the Court." (Docket No. 120 at 10.) "In the event [Swade] breaches any provision of this Agreement and/or the Consent Judgment, Fender shall be entitled . . . to recover from Swade its attorneys' fees and costs incurred in connection with enforcing the terms of this Agreement and/or the Consent Judgment." (Docket No. 94 at 9.)

2

April 7, 2017 (Docket No. 123), granted Fender's Motion and held Swade in contempt of court for violating the settlement agreement and permanent injunction.

The Court also ordered Fender to file a file a motion for attorney fees, which it did on May 8, 2017. (Docket Nos. 126, 128 and 129.) Swade opposed the fees. (Docket No. 130.) Fender's fee request was taken under advisement with instructions to Fender to recalculate and resubmit its attorney fees and costs at the reduced hourly rates found by the Court to be commensurate with the local market (*see* Order and Memorandum at Docket No. 135), which Fender also did. (Docket No. 140.) Fees and costs of $119,671.15 were awarded to Fender on October 30, 2017. (Docket No. 143.)

On November 28, 2017, Swade filed a notice of appeal of the fee award and the order granting Fender's motion for contempt. (Docket No. 149.)[4] Fender filed a second motion for fees on February 20, 2018. (Docket No. 161.) On February 23, 2018, the Court denied Fender's motion without prejudice pending resolution of Swade's appeal. (Docket No. 165.) The Sixth Circuit dismissed Defendants' challenge to the contempt order for lack of jurisdiction and affirmed the award of attorney fees. (Docket No. 169.) Fender then filed a renewed motion for fees, including fees related to the appeal (Docket No. 174), which is the motion presently before the Court. Swade filed a response in opposition. (Docket No. 184.)[5]

---

[4] On February 20, 2018, Swade separately filed a "subsequent notice of appeal" (Docket No. 159) of the Court's order on Swade's motions for reconsideration and for a new trial. The Sixth Circuit affirmed the denial of those motions. (Docket No. 169 at 3 n.2.)

[5] Shortly before Fender filed its second attorney fees motion, Defendants' attorneys of record were permitted to withdraw. (Docket No. 177.)

3

## II. Legal Standard

The applicable standards for determining awards of attorney fees were already set out by this Court in its prior ruling on Fender's first fee request. *See* Order at Docket No. 135 at 3-4. As discussed there, a reasonable attorney fee is calculated by the lodestar method, which is the number of hours expended on the litigation multiplied by a reasonable hourly rate. *The Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016).[6] The burden of establishing entitlement to a fee award by documenting the appropriate hours expended and appropriate hourly rate rests with the fee applicant. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also Green Party of Tenn. v. Hargett*, 2014 WL 1404900 at * 1 (M.D. Tenn. April 10, 2014) (plaintiffs bear the burden to document the hours worked and rates sought) (citing *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 617 (6th Cir. 2007)). The party seeking fees must provide the court with billing records that describe the work performed in sufficient detail to establish that the work is reasonably related to the litigation. *Green Party* at * 1. Even when the request for fees is unopposed, "the [c]ourt has an independent duty to review the fee request to determine its reasonableness." *State Farm Fire & Cas. Co. v. Rowland Plumbing, Ltd.*, 2013 WL 5442302, at *2 (N.D. Ohio Sept. 27, 2013) (citing *Hensley*, 461 U.S. at 433).

---

[6] This same analysis applies whether the fees are requested under a fee shifting statute or are, as here, provided for by contract. *Six L's Packing Company, Inc. v. James Eric Beale*, 2014 WL 12477348, at *2 (M.D. Tenn. May 28, 2014). In *Ford v. Uniroyal Pension Plan*, the Sixth Circuit held that federal common law is properly applied to determine the reasonableness of a contractual attorney fee award. 154 F.3d 613, 620 (6th Cir. 1998); *see also Graceland Fruit v. KIC Chemicals, Inc.*,320 Fed.Appx 323, 328 n.6 (6th Cir. 2008) (reiterating principle). The Sixth Circuit subsequently cautioned that the federal standards are only applicable when the attorney fee issue is ancillary to the main litigation. *Alticor, Inc. v. Nat'l Union Fire Ins. Co. of Penn.*, 345 Fed.Appx. 995, 1000 (6th Cir. 2009). That is the circumstance here. Although Fender relies in part on Arizona law (*see* Docket No. 175 at 10), the Court finds that the request for attorney fees in this case is ancillary to the main litigation over trademark and trade dress infringement, which means that federal common law applies to the determination. Additionally, the Court previously applied the federal common law standards without any contest by Fender.

The court must exclude from the fee calculation hours that were not "reasonably expended." *The Northeast Ohio Coalition*, 831 F.3d at 702. Counsel are expected to "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id*. (quoting *Hensley*, 461 U.S. at 434).

The Supreme Court has cautioned that a request for attorney's fees "should not result in a second major litigation." *Hensley*, 461 U.S. at 437. The two-step lodestar calculation provides an "initial estimate of the value of a lawyer's services." *Id.* at 433. However, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry." *Id.* at 434. After determining the lodestar amount, the court may adjust the fee upward or downward "to reflect relevant considerations peculiar to the subject litigation." *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). However, "trial courts need not, and should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection." *Id.* Therefore, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

### III. Discussion

Fender requests an additional $87,273.28 in attorney fees and costs, $49,528.91 of which were incurred in further proceedings before this Court and $37,744.37 in fees on appeal[7]. This total is derived from the work of multiple attorneys, including Fender's local counsel. The fees are calculated at the reduced hourly rate previously approved by this Court.

---

[7] As discussed below, there is a slight math error of $.50 in calculation of the appeal fees and the requested amount is not consistently stated. These numbers include the corrected math error, as well as the greater of the two inconsistently stated requested amounts.

### A. Proceedings before this court

The $49,428.01 in additional fees requested for proceedings before this Court between September 2017 and January of 2018 includes fees and expenses of Kilpatrick Townsend & Stockton LLP ("Kilpatrick") totaling $48,423.91 and fees of local counsel, Butler Snow LLP totaling $1,105. The Court finds the fees of Butler Snow to be reasonable and appropriately awarded in full.

The Kilpatrick supervising partner responsible for the case was Theodore Davis. Mr. Davis was assisted by several other attorneys at Kilpatrick during this five-month period. From review of the billing records (Docket No. 163), the Court finds that during the months of November and December of 2017, there was substantial duplication of time on research and drafting of documents by Mr. Davis, Jared Welsh, and Crystal Genteman related to Defendants' motions for reconsideration and for a new trial, particularly given the experience of each of those attorneys. While multi-lawyer litigation is not inherently unreasonable, at the same time, the Court must, when determining the reasonableness of the requested fees, evaluate whether the case is "overstaffed." *Hensley*, 451 U.S. at 434; *see also The Northeast Ohio Coalition*, 831 F.3d at 704 (remarking that multiple representation can be productive but there is also the danger of duplication, a waste of resources that is difficult to measure).

The Court recognizes that although the time of no one attorney viewed in isolation seems excessive, when considering that multiple attorneys were working on the same matters, presumably researching the same issues related to Defendants' requested reconsideration and new trial, and working on the same draft of responses to those motions, the overall amount of time spent, and therefore fees requested, is not reasonable. Fender is not entitled to have multiple attorneys duplicating time on the same matters, when fewer attorneys could have accomplished

6

the job, particularly given the expertise and experience of the responsible attorneys. As an attorney's hourly rate increases based on their experience, the reasonable expectation is that the work done by that attorney will be more efficient, requiring less time and less review by peers.

Additionally, at least some of the time spent by Kris Teilhaber, who is presumably a paralegal, appears to be non-compensable clerical time. "Purely clerical or secretarial tasks, that is, non-legal work, should not be billed . . . regardless of who performs the work." *Adkins v. Comm'r of Soc. Sec.*, 393 F. Supp. 3d 713, 720 (N.D. Ohio 2019) (citing *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989)); *see also Hensley*, 461 U.S. at 437 ("Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."); *Gibson v. Scott*, No. 2:12-CV- 1128, 2014 WL 661716, at *4 (S.D. Ohio Feb. 19, 2014) ("A 'purely clerical or secretarial' activity is not billable at a paralegal's rate, or at any rate at all, because such tasks are included in office overhead." (citations omitted)). "Clerical work involves tasks that do not require legal knowledge, such as filing motions, preparing or reviewing summons, and receiving and filing correspondence." *Miller v. Davis*, 267 F. Supp. 3d 961, 996–97 (E.D. Ky. 2017) (citations omitted), *aff'd sub nom. Miller v. Caudill*, 936 F.3d 442 (6th Cir. 2019); *see also Adkins*, 393 F. Supp. 3d at 720 ("Time spent, for example, calendaring matters, serving documents, and taking dictation is non-compensable clerical work."). Much of the time spent by Kris Teilhaber is for calendaring or electronic filing of documents. *See* Docket No. 163 at 9, 12, 16.[8] These activities could be performed by administrative staff. Even when they are performed by paralegals, they are not compensable. The non-compensability of those time entries further supports an overall

---

[8] Other of the entries for this timekeeper do not provide adequate description of the services provided, often just stating that a specific document was reviewed but without any other detail of the purpose of the review. This lack of description is an additional basis for a reduction in fees.

reduction. For all these reasons, the Court finds that a reduction of $10,000 in requested attorney fees is appropriate to account for the duplication of attorney time and the non-compensable time.

Fender was previously awarded fees for more than 268 hours expended by Kilpatrick in proceedings before this Court. *See* Docket No. 140-1 at 2. Here, the request is for an additional 111 hours of time by Kilpatrick for matters before this Court. *See* Docket No. 163 at 5-6. A $10,000 reduction is the rough equivalent of 21%, which the Court finds to be a reasonable reduction in the context of this case, including the issues involved and the relative experience of the billing attorneys. *See Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 576 (6th Cir. 2019) (reduction of 35% not outside scope of district court's substantial discretionary authority).

### B. Appeal proceedings

The Court finds that a reduction is also appropriate for the time spent by Kilpatrick on the appeal in this case. First, the Court notes that there is a discrepancy in the amount of requested fees. The amount requested is referred to variously as $37,744.87 (*see* Docket No. 174 at 3) and $34,744.87 (*id*. at 19 and 20).[9] Responsibility for the error rests with the applicant. Nevertheless, the Court will give Fender and Kilpatrick the benefit of the larger requested amount of $37,744.87, less the $.50 math error (equals $37,744.37).

In reviewing the time records for the appellate work, there was, again, substantial duplication of time by Mr. Davis and Ms. Genteman on research and drafting of appellate briefs. *See* Docket No. 176 at 7-8. The Court does not suggest that the arguments made by Defendants on appeal did not warrant serious attention by Fender. However, during the month of June 2018 alone, Mr. Davis and Ms. Genteman spent a combined total of more than 70 hours on these matters.

---

[9] There is also a fifty-cent math error in the calculation of appeal fees. *See* Docket No. 175 at 19.

From the descriptions of some of Mr. Davis' time, it appears that a nominal effort was made to allocate responsibility for different parts of the brief, perhaps by issues. *See* Docket No. 176 at 7-8 (time entries for THD for 6/4/2018, 6/19/2018, 6/21/2018, and 6/27/2018). However, that cannot be said with certainty because other of Mr. Davis' time entries simply state "preparation of appellate brief." *Id*. (time entries for 6/20/2018 and 6/27/2018). All Ms. Genteman's time entries, other than the first one of the month on June 4, 2018, broadly describe her work as "continue drafting appeal brief." *Id*. at 7-8. This is an unreasonable duplication of time by attorneys of Mr. Davis' and Ms. Genteman's experience, particularly given Swade's unfounded arguments on appeal. Stated another way, the time spent on researching and preparation of an appellate brief is not commensurate with the arguments made by Fender that the appeal was "patently frivolous." Docket No. 175 at 19.

Further, as previously discussed, the time of Kris Teilhaber, billed at paralegal rates, was often spent on non-compensable matters. For instance, such things as electronic filing (Docket No. 176 at 8, KET entry for 6/27/2018) and preparing internal binders for attorneys' use (*id*. at 10, KET entry for 8/31/2018; at 11, KET entry for 9/4/2018; and, 13, KET entry for 10/9/2018).

Based on the duplication (including lack of detail) and time spent on non-compensable tasks, the Court finds that an additional reduction of $15,000, or roughly 40% reduction of the fees related to the appeal, is warranted. Together, the reduction of $25,000 represents an overall reduction of roughly 30% in the total fees request, which under all the circumstances of this case, the Court finds results in a reasonable award of attorney fees and expenses.

The Court is also persuaded this reduction is reasonable based on arguments made by Swade of the imbalance of wealth between the parties. *See* Docket No. 184. Ability to pay is an appropriate consideration when determining the amount of fees to be awarded under the lodestar

analysis. *Wolfe v. Perry*, 412 F.3d 707, 724 (6th Cir. 2005) (collection of cases).[10] Here, Fender was already awarded fees and expenses of almost $120,000. The additional amounts now requested by Fender would result in an attorney fee award of more than $200,000 for this case, in which there was never even a trial. While Swade's opposition to the fee application is unnecessarily consumed with casting aspersions at Fender and rehashing arguments that have already been rejected, Swade does refer to his business as a garage operation and this litigation as having cost him everything. Docket No. 184 at 2. The Court will liberally construe these as arguments that Swade has limited ability to pay the full additional amount requested by Fender. This further bolsters a reduction in the requested fees. *See Wolfe v. Perry*, *id*. (award of attorney's fees "should not subject the [paying party] to financial ruin.") (quoting *Miller v. L.A. County Bd. of Educ.*, 827 F.2d 617, 621 (9th Cir. 1987)). The total amount of fees and expenses previously awarded to Fender with the additional amount recommended here adequately serve the intended deterrent effect of fee-shifting.

## IV. Recommendation

Based on the foregoing, it is respectfully recommended that Fender's second motion for attorney fees and expenses (Docket No. 174) be GRANTED IN PART AND DENIED IN PART, specifically, that:

1. Fender be awarded attorney fees and expenses for proceedings before this Court between September 2017 and January 2018 in the amount of $39,528.91, representing fees and expenses of Butler Snow in the amount of $1,050 and fees and expenses of Kilpatrick in the amount of 38,478.91.

---

[10] Although *Wolfe v. Perry* was a statutory fee-shifting case, as noted above, the lodestar analysis is the same whether fees are awarded by statute or by contract.

2. Fender be awarded attorneys fees and expenses of Kilpatrick for the appeal in the total amount of $22,744.37.

3. All other requested fees be denied.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

    Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge